UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHARON CHAVIS and MYA CHAVIS,** | Civ. No. 17-2855 (KM) (JBC) |
| **Plaintiffs,** | |
| v. | **OPINION** |
| **STATE OF NEW JERSEY, CHRIS CHRISTIE, JERSEY CITY MEDICAL CENTER, and MEADOWVIEW PSYCHIATRIC HOSPITAL,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiffs, Sharon Chavis and her daughter Mya Chavis, seek injunctive relief and damages against the defendants, Jersey City Medical Center ("JCMC"), Meadowview Psychiatric Hospital ("Meadowview"), former Governor Chris Christie, and the State of New Jersey. After an altercation with some relatives, Sharon Chavis was admitted as a patient to JCMC, and shortly thereafter transferred to Meadowview. Plaintiffs allege that the defendants have violated several New Jersey and federal laws concerning the treatment of patients and disabled people. All of the defendants have moved to dismiss.[1] I have liberally construed the allegations of these *pro se* plaintiffs, but nevertheless I must grant the motions to dismiss.

---

[1] Meadowview, represented by Hudson County counsel, has made a "Motion to Dismiss for Failure to State a Claim and/or Summary Judgment." (ECF no. 62.) Given that no discovery has been taken at this point, I will interpret the motion as one for dismissal under Fed. R. Civ. P. 12(b)(1) and (6).

1

## I. Summary[2]

Sharon Chavis suffered a "minute and temporary" mental breakdown after an altercation with one of her daughters, Karen Chavis, and that daughter's boyfriend, Darryl Medina, over the treatment of the grandchildren. Sharon[3] was admitted to Jersey City Medical Center for physical and mental trauma. (Cplt. § 2; *see also* Pl. Opp. at 16.)[4] The complaint alleges that Karen retaliated against her mother by telling JCMC a fabricated story that Sharon was responsible for starting two fires. (*Id.*)

Mya, Sharon's other daughter and plaintiff in this case, went to JCMC to visit her mother (*Id.* § 3.) On the morning of March 30, 2017, a nurse informed Mya that the hospital had released Sharon's information to Sharon's brother and could not release it to them. (*Id.*) Sharon has no brother. (*Id.*) Mya claims she was eventually able to figure out from a stranger at JCMC that her mother had been transferred to Meadowview the previous day, March 29, 2017. (*Id.*) At some point (the complaint is unclear as to when), a transfer from Meadowview to Kings Adult Care Center in Brooklyn, New York, was requested, but denied.[5]

## II. Discussion

---

[2] The complaint and moving papers do not provide a linear narrative of the events. I have pieced together a narrative from specific allegations and drawn inferences from the complaint where they could be fairly made. For purposes of this motion, the complaint's factual allegations are assumed true. For ease of reference, I will abbreviate the Complaint as "Cplt." [ECF no. 1] and the Plaintiffs' Opposition [ECF no. 66] as "Pl. Opp."

I observe parenthetically that this matter came before the court on motions for emergent relief implying that Sharon was being held at Meadowview incommunicado and against her will, and omitting the fact that the parties were regularly appearing in state court, where Sharon's situation was under review. I set aside certain irregularities, heard the parties in person, and attempted to bring about a practical resolution. Sharon was released from Meadowview on August 3, 2017. (ECF no. 52)

[3] To distinguish them readily, I will refer to Sharon Chavis, Mya Chavis, and Karen Chavis by their first names. No disrespect is intended or should be inferred.

[4] The Complaint is not in the traditional paragraph-enumerated style. I will cite to the section in which the information appears.

[5] The Complaint is also unclear as to whether Jersey City Medical Center, Meadowview, or Kings Adult Care Center allegedly denied the transfer.

2

## II. Discussion

### a. Standard of Review

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state claim upon which relief can be granted. The defendants, as the moving parties, each bear the burden of showing that no claim has been stated against them. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Moreover, when plaintiffs proceed *pro se* and without counsel, the complaint is to be "liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's *pro se* status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds *pro se*." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### b. Request for Injunctive Relief

Plaintiffs request injunctive relief repeatedly throughout the Complaint. However, they never explicitly state what form the injunctive relief should take or identify the persons against whom it should be ordered. This is of some concern because many of the alleged actions were not taken by or connected to some of the named defendants in the case (in particular, former Governor Chris Christie and the State of New Jersey).[6]

---

[6] In fact, the only factual allegations against former Governor Christie comes in the opposition brief filed by plaintiffs, where they allege that there was a political

3

The nearest the Complaint comes to requesting such relief is the request by plaintiffs that "[Sharon Chavis] be immediately removed from the jurisdiction of both hospitals[,] Jersey City Medical Center [and] Meadowview Psychiatric Hospital[,] as there is no legally substantiated reason why she is being held there." (Cplt. § 16.) She seeks this relief under the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997 *et seq.* I will interpret this as a request for injunctive relief against JCMC and Meadowview in the form of a court order mandating Sharon Chavis's release from either of those facilities.

Article III of the United States Constitution limits the jurisdictional authority granted to district courts to those cases and controversies that are actual and ongoing. *Borough of Avalon v. U.S. Army Corps of Eng'rs*, No. 16-8057, 2017 WL 3917138, at *3 (D.N.J. Sept. 7, 2017) (citing *Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 192–93 (3d Cir. 2001)). If the issues presented in a case are no longer "live," the case is moot, and for an issue to be considered "live" there must be a real and substantial controversy between the parties that could be resolved through specific relief granted by the court. *Id.* (citing *Old Bridge Owners Coop. Corp. v. Twp. of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001)). Putting aside whether the scheme under CRIPA is applicable in this case, I must first consider whether I have the authority to order the defendants to release Sharon.

By the plaintiffs' own admission, even at the time of the filing of the complaint, Sharon had been transferred out of JCMC. Even when she was there, it appears that she was not under any restraints and was free to leave. (Cplt. § 2 ("The Plaintiff Sharon Chavis was seen and evaluated by Jersey City Medical Center Psychiatrist and Social Worker where she [was] verbally told

---

argument between Sharon Chavis and JCMC staff over former Governor Christie, and that he appointed the administrative judge (not named in the Complaint or moving papers) who was assigned to the facility. (Pl. Opp. at 16.) Because there are no relevant allegations sufficient to set forth a claim, the motion to dismiss is granted as to the State and the former governor.

that she was fit to be released by Jersey City Medical Center Medical Doctors. Plaintiff Sharon Chavis was then advised that she should stay in patient *Voluntary* Unit of Jersey City Medical Behavioral Health unit of that Hospital . . . ." (emphasis added)).

At oral argument, and thereafter, the parties represented to the court that Mya was voluntarily, not involuntarily, committed to Meadowview. At oral argument, it became clear that the real relief requested was a transfer to a facility in Brooklyn that Mya regarded as superior and more appropriate. That desire is understandable, but unrelated to the injunctive application. At any rate, there seems to be no dispute that Sharon was discharged from Meadowview on August 3, 2017. (ECF no. 52)[7]

Though there are exceptions to the mootness doctrine, such as whether the issue is "capable of repetition but evading review," none of them apply here. *See, e.g., Seneca Resources Corp. v. Twp. of Highland, Elk County, Pa.*, 863 F.3d 245, 254 (3d Cir. 2017) (stating that the plaintiff bears the burden of showing that the "inherently transitory" exceptions to mootness apply). Without a live controversy, I am without the authority to act on this request for injunctive relief for release from Jersey City Medical Center and Meadowview. That injunctive claim is dismissed.

### c. The Fair Housing Act

The beginning of the complaint cites the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601, *et seq.*, as grounds for relief. (Cplt. (Introduction).) The FHAA, together with the Fair Housing Act ("FHA") itself, bans discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin" and "discrimination "in the sale or rental, or to otherwise make

---

7   In the opposition brief, plaintiffs state: "[Sharon Chavis's] total duration of confinement surpassed 120 days[ ,w]hen one day she [was] then kicked out . . . ." (Pl. Opp. at 20.) Plaintiffs are referring here to Meadowview, which is the last place, per the Complaint, to which Sharon Chavis was transferred. (Cplt. § 2–3.)

5

unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(b), (f)(1).

The complaint fails to explain the applicability of that law or set out enough facts to show that either Act applies in this case. Even construed liberally, it does not meet the minimal standard set by *Twombly*. Presumably, the plaintiffs are making a claim under the FHA/FHAA based on their applications for release from Meadowview and/or the denial of a transfer to Kings Adult Care Center in Brooklyn, New York. The complaint focuses on the violation of various procedures afforded under the New Jersey Patients' Bill of Rights, stemming from denials to the right to counsel and "closed door" proceedings, among other things. (Cplt. § 2.) The plaintiffs, however, do not allege that the denial occurred on account of some protected category, such as Sharon Chavis's race or disability. Nor do they set out facts suggesting that either facility is a "dwelling" that falls under the purview of those Acts.

The plaintiffs have failed to state a claim for relief under the FHA/FHAA.

### d. The Americans with Disabilities Act

Plaintiffs also make claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Cplt. § 11.) They claim that Sharon was denied the "right" to a housing interview with Kings Adult Care Center based on her "disability" and that they denied her the ability to "contest" such a hearing. (*Id.*) They specifically allege that the administration of Jersey City Medical Center advised Sharon Chavis that "she had no right to a [l]awyer [or] [l]egal [r]epresentation, [or to have] family, next kin [or] any legal counsel [present]." (Cplt. § 2.) They allege that Jersey City Medical Center, instead, held a "closed door" hearing over whether Sharon would be transferred to Kings Adult Care Center. (*Id.*)

Plaintiffs make a conclusory statement that Sharon Chavis "was denied the right . . . a[] housing interview with Kings [Adult Care Center] based on her

6

disability and the inability to contest such a hearing [ a]t Meadowview." (Cplt. § 11.) However, plaintiffs offer no more than "labels and conclusions" that she was discriminated against because of her disability.[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). These allegations state no more than the thwarting of the plaintiffs' wish for a transfer to a particular facility, not any disability-based discrimination.

Even under the minimal standards set out by *Twombly*, plaintiffs have not sufficiently pled grounds for relief under the ADA.

### e. Rights of Patients and Other Claims under New Jersey Law

Finally, plaintiffs allege several violations of the Rights of Patients, N.J.S.A. 30:4-24.2 (also known as the New Jersey Patients' Bill of Rights). (*See, e.g.*, Cplt. § 2.) Among other things, they claim that Sharon Chavis was denied her "right to [a] fair hearing" under that law. (*Id.*) However, the Patients' Bill of Rights provides no substantive or procedural rights regarding the transfer of a patient from one mental health facility to another independent facility (especially from a state facility to one that is out-of-state and not run by the State of New Jersey). The Patient Bill of Rights, instead, deals more broadly with the procedures surrounding a determination that a person is incapacitated, mentally ill, or mentally disabled. *See In re Absentee Ballots Cast by Five Residents of Trenton Psychiatric Hosp.*, 331 N.J. Super. 31, 36 (App. Div. 2000) ("New Jersey's commitment statute sets forth the framework for involuntary commitment of mentally-ill, and mentally [disabled] persons to state institutions designed for their care.").

Plaintiffs also make a claim under N.J.S.A. 30:4-27, *et seq.*, which concerns the involuntary commitment of patients at mental health institutions

---

[8] It is also unclear from the complaint whether Sharon was allegedly being discriminated against by Jersey City Medical Center on account of her mental disability, her legal blindness, or both.

7

and rights afforded to such patients. Again, the plaintiffs have not alleged that Sharon has been involuntarily committed; rather they seek to have her committed elsewhere, *i.e.*, Kings Adult Care Center.

Plaintiffs also claim that Sharon Chavis is being "abused, exploited[,] and neglected causing her [p]hysical health to decay" and that they are entitled to relief under the Adult Protective Services Act, N.J.S.A. 52:27D-406, *et seq*. However, this statute vests the authority to institute legal action "to protect a vulnerable adult" solely to the county director or his or her designee, N.J.S.A. 52:27D-416, and lays out detailed procedures for the provision of protective services to a vulnerable adult. *See In re Frankopf*, 363 N.J. Super. 382, 385–86 (App. Div. 2003) ("The [Adult Protective Services] Act constitutes a legislative response to the risks and dangers of abuse, neglect, and exploitation faced by our older, infirm, and vulnerable citizens, as well as other adults who are physically or mentally disabled or deficient. To meet these concerns, the Act created an efficient system for reporting the neglect, abuse, and exploitation of vulnerable adults, and established the authority by which the Superior Court may intervene, on an expedited basis, to protect 'vulnerable adults.'"). Outside of that process, the statute provides no relief for the abuse, exploitation, and neglect alleged in the Complaint.

### III.   Conclusion

For the reasons set forth above, the motions to dismiss the complaint are granted without prejudice as to all defendants. Because this is an initial dismissal, it is without prejudice to the filing, within 30 days, of an amended complaint that remedies the deficiencies identified here.

An appropriate order follows.

Dated: March 12, 2018

*/s/ Kevin McNulty*
**Kevin McNulty**
**United States District Judge**